# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

_____
)
**LUCIAN PERREAULT,**                        )
)
**Plaintiff,**                               )
)           **Civil Action No.**
**v.**                                       )           **14-13717-FDS**
)
**CAROLYN W. COLVIN, Commissioner,**         )
**Social Security Administration,**          )
)
**Defendant.**                               )
_____)

## MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION TO REVERSE AND DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER

**SAYLOR, J.**

This is an appeal of the final decision of the Commissioner of the Social Security

Administration ("SSA") denying a waiver of overpayment of Title II disability benefits.  Plaintiff

Lucian Perreault appeals the Commissioner's denial of his request for waiver of overpayment on

the ground that the decision was not supported by "substantial evidence" pursuant to 42 U.S.C.

§ 405(g).  Specifically, plaintiff contends that (1) the record evidence does not establish the

amount of overpayment; (2) the SSA failed to follow certain administrative procedures, thereby

unfairly prejudicing plaintiff; and (3) recovery of overpayment should be waived because

recovery would defeat the purpose of Title II of the Social Security Act.

Pending before the Court are plaintiff's motion to reverse the decision of the

Commissioner and defendant's motion for an order affirming the decision of the Commissioner.

For the reasons stated below, the Court will vacate the Commissioner's decision in part and

remand the case to the SSA for the purposes of determining the amount of overpayment.

I.      **Background**

On May 12, 2000, Lucian Perreault had an anxiety attack while working for the City of Boston Election Department.  (R. 149).  Perreault was subsequently diagnosed with post-traumatic stress disorder and major depression.  (*Id.*).  On April 15, 2004, the City of Boston entered into a settlement agreement with Perreault, agreeing to a lump sum payment of $90,000 in consideration for waiver of Perreault's rights to sue the City pursuant to the Massachusetts Workers Compensation Act.  (R. 148).

Perreault filed for Social Security disability benefits on June 22, 2004.  (R. 131).  On November 8, 2004, the SSA found that Perreault was disabled as of the date of his anxiety attack.  (R. 136).  The SSA awarded retroactive Title II disability benefits beginning in June 2003, providing him with a lump sum of $6,931.75 in retroactive benefits and monthly payments of $475 per month beginning in December 2004.  The SSA also appointed Perreault's wife, Sharon Perreault, as his representative payee.  *Id.*

Perreault filed for bankruptcy on October 15, 2005, and was granted a discharge on February 8, 2006.  (R. 90).  Perreault subsequently requested revocation of the discharge on advice of counsel, due to the long-term effects bankruptcy would have on his credit.  (R. 255).  The bankruptcy court granted the revocation request on March 13, 2007.  (R. 141).

On January 13, 2008, the SSA notified Perreault that he had been overpaid benefits in the amount of $21,683.80 for the period from May 1, 2004, to December 31, 2007, due to failure to report receipt of a public disability pension.  (R. 127).  The SSA revoked nearly all of Perreault's benefits on January 30, 2008.  (R. 69).

On June 13, 2008, Perreault and his wife took out a mortgage on their property in Charlestown, Massachusetts.  They later struggled to keep up with mortgage payments.  (R. 94-

2

95, 260).[1]  On December 10, 2010, Perreault and his wife sold the property in Charlestown and purchased a new home in Everett, Massachusetts.  (R. 242-44).  Perreault maintains that he has continued to struggle with his finances, submitting evidence of $20,000 in personal loans from friends in June 2010, as well as evidence of various personal and home mortgage loans.  (R. 91-93, 214-15, 246, 257).  Perreault asserts that his increased financial difficulties were due to the loss of his social security benefits, which "led him into a financial freefall."  (R. 217).

## II.   **Procedural History**

Perreault filed a request with the SSA for reconsideration along with a request for waiver of overpayment sometime in the first half of 2008.  (Compl. ¶ 7; Ans. ¶ 7; R. 69, 79, 167).  On March 2, 2009, the SSA sent him a notice affirming its decision to assert overpayment of benefits and informing him that the SSA would notify him concerning his request for waiver.  (R. 63-68).

On March 24, 2009, Perreault filed a request for a hearing by an Administrative Law Judge, stating that he believed that the finding of overpayment was erroneous.  (R. 61).  The hearing took place on June 10, 2010.  (R. 186).  On February 25, 2011, Perreault received an unfavorable decision from the ALJ.  (R. 124).  Administrative Law Judge Margaret Donaghy found that (1) the SSA correctly assessed the amount of overpayment to Perreault; (2) Perreault was at fault in causing the overpayment; and (3) recovery of the overpayment should not be waived.  (R. 128-30).

On March 11, 2011, Perreault requested a review of Judge Donaghy's decision.  (R. 185).  On February 22, 2012, the SSA Appeals Council vacated the decision and remanded the case for further proceedings.  (R. 189-94).  The Appeals Council found that (1) the decision concerning

---

[1] That loan appears to have been a "cash-out" refinance of plaintiff's previous mortgage.

the overpayment was not supported by substantial evidence; (2) the ALJ did not properly consider Perreault's disability when determining fault; (3) the ALJ did not properly consider that a representative payee had been appointed when determining fault; (4) the ALJ did not properly consider the possible discharge of debt in Chapter 7 bankruptcy proceedings when considering the issue of waiver; and (5) Perreault was without fault in causing overpayment because the SSA had appointed a representative payee, who was responsible for managing his funds.  (R. 191-93).

A second hearing before an ALJ was held on July 3, 2012.  (R. 49).  On July 31, 2012, the SSA sent Perreault a second notice of unfavorable decision.  (R. 46).  Administrative Law Judge Joel Gardiner affirmed that Perreault had been overpaid and denied waiver of the overpayment.  (R. 49).  Specifically, Judge Gardiner found that (1) the SSA correctly assessed the amount of overpayment; (2) Perreault was not at fault in causing the overpayment; (3) recovery of the overpayment would not defeat the purpose of Title II of the Social Security Act; (4) recovery of the overpayment would not be against equity and good conscience; and (5) recovery of the overpayment had not been waived.  (R. 51-53).

On March 25, 2013, Perreault filed a request for review of Judge Gardiner's decision. (R. 13).  On August 7, 2014, the Appeals Council denied the request.  (R. 4).

## III.    Analysis

### A.    Standard of Review

Pursuant to § 205(g) of the Social Security Act, this Court may affirm, modify, or reverse the Commissioner's decision, with or without remanding the case for a rehearing.  42 U.S.C. § 405(g).  The Commissioner's finding on any fact shall be conclusive if it is supported by substantial evidence and must be upheld "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion," even if the record could

support a different result.  *Rodriguez v. Sec'y of Health and Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981); *Evangelista v. Sec'y of Health and Human Servs.*, 826 F.2d 136, 144 (1st Cir. 1987).  When applying the substantial evidence standard, the Court must consider that it is the province of the ALJ, not the courts, to find facts, decide issues of credibility, draw inferences from the record, and resolve conflicts in the evidence.  *See Irlanda Ortiz v. Sec'y of Health and Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) (citing *Rodriguez*, 647 F.2d at 222).  Reversal is warranted only if the ALJ "committed a legal or factual error in evaluating a particular claim," *Manso-Pizarro v. Sec'y of Health and Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996), or if the record contains no "evidence rationally adequate on the record as a whole to justify the [ALJ's] conclusion."  *Roman-Roman v. Comm'r*, 114 F. App'x 410, 411 (1st Cir. 2004).

### B.      The SSA's Calculation of the Amount Overpaid

Plaintiff's contention that Judge Gardiner failed to establish the amount of his overpayment is meritorious.  Although there is substantial evidence of overpayment, the actual amount of overpayment is impossible to determine from the record.  The Social Security Act does not specify whether the Commissioner is required to establish proof of overpayment or the amount of overpayment.  *See* 42 U.S.C. § 404(a).  Circuits that have considered the question, however, have found that the Commissioner bears the burden of proving both.  *See McCarthy v. Apfel*, 221 F.3d 1119, 1124-25 (9th Cir. 2000); *Chlieb v. Heckler*, 777 F.2d 842, 847 (2d Cir. 1985); *Cannuni ex rel. Cannuni v. Schweiker*, 740 F.2d 260, 263 (3d Cir. 1984); *United States v. Smith*, 482 F.2d 1120, 1124 (8th Cir. 1973).  The Commissioner thus bears the burden of establishing that the SSA overpaid benefits to plaintiff, as well as establishing that the overpayments totaled $21,683.80.

###### 1.    Fact of Overpayment

The record contains substantial evidence establishing overpayment.  Although the record was not adequately developed during the initial hearing before Judge Donaghy, the Appeals Council instructed the ALJ, on remand, to enter in evidence certain documents that would establish overpayment.  (R. 191-94).  That evidence included information provided by the Boston Retirement Board establishing receipt of plaintiff's pension and the SSA's WC/PDB Offset Datasheet dated January 9, 2008.  (R. 193-94).  The information provided by the Boston Retirement Board demonstrates that plaintiff began receiving a monthly pension check from the City of Boston beginning on May 13, 2004.  (R. 154).  The WC/PDB Offset Datasheet dated January 9, 2008, shows how the SSA determined the amount payable to plaintiff after his disability benefits were offset by plaintiff's other income.  (R. 143-45).  Both documents were in evidence when Judge Gardiner made his decision on remand from the Appeals Council.  (R. 51).  Thus, there is adequate evidence in the record to establish that plaintiff was overpaid disability benefits by the SSA.

###### 2.    Amount of Overpayment

The process by which the SSA calculated the amount of plaintiff's overpayment, however, does not appear to be supported by adequate evidence in the record.  Judge Gardiner stated that "no evidence in the present file indicates that the current overpayment amount of $21,683.80 is in any way invalid or inaccurate."  (R. 51).  However, as discussed, the burden of proving the amount of overpayment is on the Commissioner.  The lack of evidence in the record disproving the SSA's calculation thus cannot suffice to meet the Commissioner's burden.

There is little other discussion of the overpayment calculation in the record.  The reconsideration determination and Judge Donaghy's decision explain how the reduction of

benefits was calculated pursuant to 20 CFR 404.408.  (R. 65-68, 129).  There is no evidence, however, of what payments plaintiff actually received from the SSA or how the SSA reached the amount of $21,683.80.  On remand, the SSA must therefore provide adequate evidence to support a finding of overpayment in the amount of $21,683.80.

      **C.**     **The SSA's Failure to Follow Procedure**

Plaintiff next contends that that the SSA's failure to follow certain administrative procedures constitutes reversible error.  Specifically, plaintiff contends that (1) the SSA improperly failed to issue a reconsideration determination on the request for waiver before withholding benefits, and (2) he has been unfairly prejudiced because the SSA failed to maintain a transcript of his initial hearing before Judge Donaghy.

      **1.**     **The SSA's Decision to Withhold Benefits Was Harmless Error**

      **a.**     **Failure to Defer Recoupment**

The SSA may have improperly withheld plaintiff's benefits before considering his request for waiver.  When the SSA seeks to recoup overpaid benefits from recipients, it must defer recoupment when a recipient requests a waiver of the overpayment until the SSA holds a hearing on the merits.  *Califano v. Yamasaki*, 442 U.S. 682, 695-96 (1979).  The parties do not dispute that plaintiff, at some point, filed a request for waiver and a request for reconsideration.  The record is not clear, however, as to whether plaintiff filed a request for waiver before the SSA began withholding his benefits, or after.

The Commissioner contends that the SSA was not required to defer withholding benefits because plaintiff simultaneously requested a waiver of overpayment and reconsideration of the overpayment in early 2008, but failed to proceed with the necessary administrative steps to continue with the waiver request.  (Def. Mem. at 8-9).

The record does contain a note (in the SSA's overpayment summary) stating that on January 22, 2008, plaintiff requested a waiver of overpayment and reconsideration.  (R. 79).  The record here also indicates that plaintiff did not, at least initially, file the paperwork SSA required to process the waiver.  (Def. Mem. Ex. C).  The record nowhere indicates whether plaintiff complied with that requirement or not.  Thus, although there is evidence in the record that plaintiff requested a waiver of overpayment, it is unclear whether he actually followed the appropriate administrative steps necessary to complete the waiver request.

b.      **Harmless Error**

Even if the SSA did fail to defer reduction of plaintiff's benefits, however, any procedural failure was harmless.  When reviewing administrative proceedings, procedural errors are harmless unless they caused actual prejudice.  *See Save Our Heritage, Inc. v. F.A.A.*, 269 F.3d 49, 61 (1st Cir. 2013).  The burden of proving actual prejudice is on the plaintiff and there is no prejudice when a procedural error "did not produce a different result for the plaintiff." *Campanale & Sons, Inc. v. Evans*, 311 F.3d 109, 127 (1st Cir. 2002).  As noted, the record supports the finding that plaintiff was overpaid social security benefits for approximately three and a half years.  Although the precise amount overpaid is unclear, the initial notice of award of benefits states that plaintiff would receive $475 per month as of December 2004.  (R. 136). There is also evidence that plaintiff was not entitled to receive any benefits from May 2004 through December 2007.  (R. 65-68).  Thus, there is evidence to support the conclusion that plaintiff owes approximately $20,000 to the SSA for benefits paid to him between May 2004 and December 2007.[2]  Plaintiff was never entitled to those benefits, and the SSA subsequently found that waiver of overpayment was unjustified.  Thus, the fact that the SSA may have begun

---

[2] May 2004 through December 2007 is a period of 44 months.  If plaintiff received $475 per month during that time, he would have received $20,900 in total.

recouping those benefits before they issued a decision on plaintiff's waiver request did not produce a different result for plaintiff.  Therefore, even if the SSA improperly withheld plaintiff's benefits before considering his request for waiver, any such error was harmless.

> **2.      Plaintiff Has Not Been Unfairly Prejudiced by the Failure of the SSA to Maintain an Adequate Evidentiary Record**

There is no evidence that plaintiff was unfairly prejudiced by the SSA's failure to obtain a transcript of the hearing before Judge Donaghy.  Plaintiff does not suggest that there was some crucial evidence presented at the hearing before Judge Donaghy that would alter the outcome of this case or that made Judge Gardiner's decision fundamentally unfair; he simply asserts that the lack of a transcript of the first hearing has made his appeal more difficult.  (Pl. Mem. at 8).  The lack of a transcript of plaintiff's first hearing, however, does not appear to have prejudiced his appeal, as he had a full opportunity to provide evidence and argument before Judge Gardiner at his second hearing, for which a transcript is available.

> **D.      Waiver of Recovery for Overpayment**

Recovery of overpayment is waived if a claimant is without fault and recovery would defeat the purpose of Title II of the Act or be against equity and good conscience.  20 C.F.R. 404.506(a).  The parties do not contest that plaintiff was not at fault for the overpayment of benefits because his benefits were paid to a representative payee, whose responsibility it was to notify the SSA of any changes in his income.  (Def. Mem. at 14; R. 52).  Judge Gardiner held that recovery of the overpayment would neither deprive plaintiff of ordinary needs, nor be against equity and good conscience.  (R. 52-53).  Specifically, Judge Gardiner found that (1) several of the plaintiff's reported living expenses were speculative or gratuitous in nature, (2) plaintiff provided insufficient documentation to establish his claimed $2,325 per month in loan payments; and (3) plaintiff's down payment of more than $150,000 on the purchase of his

Everett home undermined his claim that he was in financial distress.  (*Id.*).  That decision was supported by substantial evidence in the record, and a reasonable mind, reviewing the record as a whole, could accept the evidence as adequate to support a conclusion that recovery would not defeat the purpose of Title II of the Social Security Act.

### 1.    The Purpose of Title II

Whether the purpose of Title II is defeated "depends on whether [a] person has an income or financial resources sufficient for more than ordinary and necessary needs . . . ."  20 C.F.R. § 404.508.  While the claimant bears the burden of establishing that repayment would deprive him of financial resources sufficient for ordinary and necessary needs, *Jones v. Soc. Sec. Admin.*, 2004 WL 2915290, at *2 (D. Mass. Dec. 14, 2004), *aff'd*, 150 F. App'x 1 (1st Cir. 2005), it is also the duty of the ALJ to evaluate the entire record and investigate the facts before him.  *Sims v. Apfel*, 530 U.S. 103, 111 (2000).

### a.    Plaintiff's Income and Expenses

Plaintiff filed two requests for waiver of overpayment detailing his household income and living expenses, one for each of his hearings before the ALJs.  (R. 82, 221).

### i.    First Request for Waiver

In plaintiff's original request for waiver, filed on June 10, 2010, he reported household income of $3,403.84 per month.  (R. 86).  Monthly expenses were reported as $1,909 in rent or mortgage payments; $600 in groceries; $50 in clothing; $200 in insurance; $100 in automobile expenses; and $500 in loan, credit, and lay-away payments.  (R. 87).  That resulted in total expenses of $3,359 per month (although the reported total was $3,709).  (R. 87).  Although not supported by adequate evidence in the record, those calculations would result in an approximate excess of income of $45 per month.

### ii.        Second Request for Waiver

In plaintiff's second request for waiver, filed on July 16, 2012, his household income was reported as $4,273.30 per month. (R. 225). Monthly expenses were reported as $1,305 in rent or mortgage payments; $950 in groceries; $783 in utilities; $150 in clothing; $87 in home-related fees and expenses; $172 in insurance payments; $175 in dental and medical expenses after insurance; $2,325 in loan, credit, and lay-away payments; and $300 in school expenses and doctors visits, totaling $6,247 (although the total reported was $5,447). (R. 226). Although also not supported by adequate evidence in the record, those calculations would result in a monthly deficit of approximately $2,000.

### iii.        Consistency with the Record

As of 2011, plaintiff's wife received $15,468 per year in social security income, or $1,289 per month. (R. 241). As of May 2010, plaintiff received a gross amount of $2,968.68 per month from his pension, with the net amount totaling $2,114.84 after deductions. (R. 240). Plaintiff reported income from his pension of $2,114.84 on his first request for waiver and $2,969.63 on his second (R. 86, 225). During the hearing before Judge Gardiner, plaintiff seemed uncertain about how much he received for his pension, saying that he was not sure where the figures on the first waiver of overpayment came from, but that the amount he received from his pension had never changed. (R. 269, 271). It is reasonable to infer that plaintiff reported the net amount of his pension he received in the first waiver of overpayment request and the gross amount of his pension in the second request. Thus, plaintiff's household's income appears to be $3,403.84 per month, consistent with his first waiver of overpayment request. (R. 86).

Plaintiff's reported expenses, however, are not consistent with the record. The total monthly amount due on plaintiff's mortgage statement from June 2012 is $1,043.46,

significantly less than what is claimed.  (R. 214, 226).  The record also includes documentation

of a monthly payment of $142.51 to TD Bank for a home equity line of credit. (R. 232).[3]

 Plaintiff provided as proof of utilities an AT&T bill of $157.98 (R. 233); a water and

sewer bill of $107.84 (R. 234); an electric bill of $96.55 (R. 236); and a cable television bill of

$173.05.  (R. 238).  In total, these utilities amount to approximately $536, a difference of

approximately $225 from what plaintiff claimed as utilities expenses on his request for waiver.

Plaintiff also appears to be paying his insurance in monthly installments of $66, approximately

$100 less than reported on the request for waiver.  (R. 237).

 As proof of non-home debt payments, plaintiff provided a billing statement for a car

payment indicating monthly payments of $169.07 per month.  (R. 235).  Plaintiff also included a

statement showing that he makes a monthly payment of $49 to GE Capital Retail Bank.

(R. 230).

 With respect to these items, there is more than sufficient evidence to establish that

plaintiff has monthly expenses of $1,832.41, exclusive of his cable television bill.

 Plaintiff also reported various other costs that are not supported by evidence in the

record.  The Court agrees with Judge Gardiner's assessment that spending $150 per month on

clothing and $950 per month on groceries in a household of four people is somewhat speculative

in nature.  This is especially true when the reported amount is considered in conjunction with the

request for waiver filed in 2010, which estimated expenses of $600 in groceries per month and

$60 in clothing per month for a household of five.  Without evidentiary support, this discrepancy

casts doubt on the credibility of plaintiff's claims.  Plaintiff also has not provided any evidentiary

---

[3] Presumably, this is the payment plaintiff referred to as his "second mortgage" during his second hearing.
(R. 271).

support for his claims of $475 per month in school expenses and doctors' visits.

Still, giving plaintiff credit for the lesser of the reported grocery and clothing amounts brings his total expenses to $2,492.41 ($1,832.41 + $660).

The real difficulty with calculating plaintiff's monthly expenses, however, arises out of the incomplete records of his payment obligations on two loans from the City of Boston Credit Union.  First, plaintiff submitted records of payments made between May 2009 and April 2010 on a personal loan from CBCU.  (R. 96-119).  During that period, plaintiff paid $700 each month on the loan.  *Id.*  There is no evidence of if, how, or when plaintiff paid the remaining $7,938 of this loan.  Second, plaintiff submitted evidence that, as of July 2, 2012, he owed $15,842.42 on a second CBCU loan.  (R. 215).  A letter from the CBCU, dated July 10, 2012, states that plaintiff is currently paying a total of $1,000 toward the two loans with the credit union, although the letter does not specify whether regular monthly payments are being made or even if they are required.  (R. 246).  Thus, there is some evidence to support a finding that plaintiff has made some regular payments to the credit union.

However, despite the fact that these payments were made, plaintiff (who was represented by counsel) did not submit any evidence to show if, when, or how much he was obligated to pay on those loans going forward at the time of the hearing.  Because the burden is on the plaintiff to establish his necessary expenses, Judge Gardiner was not required to credit those expenses if they were not sufficiently supported by the evidence.  *See Jones*, 2004 WL 2915290, at *2.

 As noted, plaintiff's household income appears to be $3,403.84.  Between mortgage payments, utilities, car payments, insurance, groceries, and clothing costs, plaintiff has credibly alleged expenses of $2,492.41.[4]  That number falls short of his monthly income by $907.59.  The

---

[4] The total is $2,932.41 if plaintiff's second estimate of grocery and clothing costs is taken at face value.

record indicates that SSA plans to recover plaintiff's overpayment by withholding the benefits currently due, which were $35 per month as of 2008. (Def. Mem. Ex. A).[5]  As a result, the record contains substantial evidence to support Judge Gardiner's ruling that recovery of the overpayment would neither deprive plaintiff of ordinary needs, nor be against equity and good conscience.

### b.     <u>Plaintiff's Property Interest</u>

Although not necessary to his finding given the evidence of plaintiff's income and expenses, Judge Gardiner also found that plaintiff's down payment of more than $150,000 at the closing sale of a property he purchased in Everett undermined his claim that he was in financial distress. (R. 52-53).  In June 2008, plaintiff took out a mortgage on his property in Charlestown, borrowing $255,000. (R. 94).  That transaction supports plaintiff's claim that the SSA's decision to withhold his benefits placed his household in financial distress.  In December 2010, plaintiff and his wife sold that home in Charlestown and purchased a new home in Everett. (R. 242-45).  Plaintiff testified that this was due to the household's inability to keep up with their mortgage payments.   The home in Charlestown sold for approximately $450,000, of which $250,000 went toward payoff of the mortgage. (R. 242).  After settlement costs and legal fees, plaintiff netted approximately $175,000 from the sale. (*Id.*)  The Everett home cost $290,000. (R. 244).  Plaintiff paid approximately $150,000 in cash and borrowed the remaining $140,000. (*Id.*)  It thus appears that plaintiff used most of the money he received from the sale of his home in Charlestown to purchase the home in Everett.[6]  Plaintiff testified that he used the remaining

---

[5] Presumably, plaintiff's entitlement has continued to rise slightly each year based on an increased cost-of-living adjustment.

[6] Plaintiff stated during the hearing before Judge Gardiner that his wife was responsible for managing the transaction. (R. 265).

proceeds from the Charlestown sale to pay other debts, although there is no documentation to support his statement.  (R. 264).

Judge Gardiner found that plaintiff's ability to pay approximately $150,000 toward buying the Everett home, while not determinative, cast doubt on the credibility of plaintiff's claims of being in "insurmountable debt."  (*Id.*)   Judge Gardiner also noted that the payment left plaintiff with a significant equity interest in the Everett home.  (*Id.*).  Although homeownership is a worthy goal, it is not one of life's necessities.  It is possible that plaintiff has the ability to access that equity, and that doing so would allow him to pay off his current debts.

Regardless, Judge Gardiner specifically noted that the down payment issue was not "outcome determinative."  It is clear that Judge Gardiner took the fact of the down payment and plaintiff's resulting equity in the home into account only for the purposes of considering plaintiff's overall credibility, which this Court will not second-guess.  *See Irlanda Ortiz*, 955 F.2d at 769-70; *accord Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 141 (1st Cir.1987) ("[c]onflicts in the evidence are, assuredly, for the [SSA]-rather than the courts-to resolve").  Thus, to the extent that Judge Gardiner did consider the payment, it was not error to do so.

## IV.   <u>Conclusion</u>

For the foregoing reasons, plaintiff's motion for an order to reverse the final decision of the Commissioner of the Social Security Administration is GRANTED in part and DENIED in part, and defendant's motion to affirm the action of the Commissioner is DENIED.  The Commissioner's decision is vacated as to the amount of overpayment made to plaintiff, and the matter is remanded to the Commissioner for further proceedings consistent with this order.

**So Ordered.**

/s/  F. Dennis Saylor
F. Dennis Saylor IV
Dated:  April 8, 2016                              United States District Judge